**SO ORDERED.**

**SIGNED this 30 day of August, 2006.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**
_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

IN RE:

SOUTHERN PRODUCE
DISTRIBUTORS, INC.,

                Debtor.                               Case No. 03-02838-8-JRL


SOUTHERN PRODUCE
DISTRIBUTORS, INC.,

                Plaintiff,

vs.                                    Adversary Proceeding No.:
                                    05-00013-8-AP

CHARLIE FRIEDMAN and
FRIEDMAN & BROUSSARD
PRODUCE, INC.,

                Defendants.

_____

## ORDER

This matter is before the court on the defendants' motion for summary judgment. On August 8,

1

2006, the court conducted a hearing in Raleigh, North Carolina.

## UNDISPUTED FACTS

1.      The plaintiff is a corporation organized under the laws of the State of North Carolina with its

principal place of business in Faison, North Carolina.

2.      On March 31, 2003, the plaintiff filed a Chapter 11 petition and a plan of reorganization was

confirmed in the case on September 17, 2004.

3.      The plaintiff is in the business of acquiring and selling sweet potatoes and other produce.

4.      On March 24, 2000, the plaintiff entered into a contract (the "Contract") with Charlie Friedman

and Friedman & Broussard Produce, Inc., allowing them to exclusively purchase, broker and

sell sweet potatoes and produce for the plaintiff beginning March 24, 2000 through March 23,

2010.

5.      On January 19, 2005, the plaintiff filed a complaint against Charlie Friedman and Friedman &

Broussard Produce, Inc. ("Friedman & Broussard"), asserting that the defendants violated the

Contract, specifically the covenant not to compete. The plaintiff alleges that the defendants

contacted their customers and solicited business from such customers without the plaintiff's

consent.

6.      In their answer, the defendants argue that the plaintiff breached the Contract initially and deny

the plaintiff's allegations.

## PROCEDURAL HISTORY

On January 30, 2006, the court entered an order establishing the deadline for filing dispositive

motions in this proceeding as March 27, 2006. The defendants filed a motion for summary judgment on

that date, along with an affidavit of Charlie Friedman, an affidavit of Charlotte Peyton, and the plaintiff's responses to defendants' first set of discovery. The motion for summary judgment did not provide the grounds on which the defendants based their request for relief but reserved their right to submit a brief and supplement the record with respect to the motion. On July 11, 2006, the plaintiff filed a response asserting that the defendants' motion for summary judgment lacked specificity and as a result, it was difficult for the plaintiff to adequately respond.

On August 2, 2006, six days before the scheduled hearing, the defendants filed a memorandum in support of their motion for summary judgment. In the memorandum, the defendants allege that the plaintiff breached the Contract in several ways. First, the plaintiff allegedly failed to pay commissions to the defendants under the terms of the Contract prior to filing this case, as evidenced by Charlie Friedman's affidavit and the plaintiff's admission that funds in the amount of $49,477 were owed to Friedman & Broussard as of the petition date. Second, the plaintiff sold sweet potatoes to the defendants' customers under the defendants' labels, without permission.

Due to these alleged breaches, the defendants assert that they are excused from further performance and the Contract is effectively dissolved. As the Contract was executed in Louisiana, the defendants contend that the substantive law governing these claims must be Louisiana law, not North Carolina law. Although the Contract contains non-competition language, the defendants note that Louisiana has a strong public policy against non-competition agreements. Consequently, the defendants argue that the plaintiff could not prevail against them on any claims flowing from a breach of the non-

competition terms of the Contract.[1]

The defendants also argue that the Contract is an executory contract and was not properly assumed pursuant to 11 U.S.C. § 365. The Contract was not listed on Schedule G of the plaintiff's petition and the schedules were never amended to reflect that the Contract was an executory contract, subject to assumption or rejection. The plaintiff's plan of reorganization states that the "debtor rejects all unexpired leases and executory contracts unless specifically accepted and assumed by separate court order or by written notice given by the debtor within thirty days of the Effective Date." On October 27, 2004, within thirty days of the Effective Date, the plaintiff filed a notice of assumption of executory contracts and unexpired leases, listing the Contract as assumed.

The defendants contend that allowing a debtor to assume an executory contract not disclosed or identified on the schedules, with no prior notice to the contracting party, is inequitable and fails to comply with the Bankruptcy Code.[2] Additionally, the defendants contend that the plaintiff was in default of the Contract as of the petition date, requiring the plaintiff to cure the default in order to assume the Contract. Based on the plaintiff's failure to cure the pre-petition default, the defendants argue that the Contract was not properly assumed and summary judgment is appropriate as to any cause of action or damages that flow from breach of the Contract.

---

[1] The defendants also assert that the plaintiff cannot prevail on Counts IV and VI of the complaint because those counts are based on specific North Carolina statutory remedies and this case involves Louisiana substantive law.

[2] The defendants cite Rule 6006 of the Federal Rules of Bankruptcy Procedure, which states that "a proceeding to assume, reject, or assign an executory contract. . .other than as part of a plan, is governed by Rule 9014." In this case, the executory contracts were assumed pursuant to Article 8 of the plaintiff's plan of reorganization. Accordingly, Rule 9014 does not apply.

On August 7, 2006, the plaintiff filed a memorandum of law in opposition to defendants' motion for summary judgment.[3] The plaintiff asserts that the defendants' memorandum of law was not served in a timely manner and the plaintiff did not have an adequate opportunity to respond to it. Specifically, the plaintiff was not able to review and analyze Louisiana state law and its application in this case. Based on the defendants' failure to meet the pleading requirements of the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure, the plaintiff requests an opportunity to supplement the record with a more comprehensive memorandum in opposition to the assertion that Louisiana substantive law applies in this adversary proceeding.

The plaintiff also asserts that the defendants, by their own admission, did not have knowledge of the plaintiff's alleged use of defendants' labels and alleged sales to defendants' customers until after discovery. If this information was not known to the defendants until depositions were taken in March of 2006, the plaintiff contends that defendants' failure to perform under the Contract was not excused. The plaintiff also argues that there is a genuine issue of material fact regarding the existence of the breaches alleged by the defendants.

As to the amount allegedly owed to defendants by the plaintiff relating to pre-petition commissions, the plaintiff notes that the Contract is silent as to how frequently commissions are to be paid to the defendants.[4] If commissions were paid irregularly throughout the course of the Contract, the plaintiff asserts that there was no default at the time of the filing of the bankruptcy petition. Additionally,

---

[3] An affidavit of D. Stewart Precythe, CEO of the plaintiff, was filed along with the plaintiff's memorandum.

[4] The affidavits of Charlie Friedman and Stewart Precythe are contradictory with regard to how frequently the defendants received commission payments.

the plaintiff contends that there is a genuine issue of material fact as to whether it is entitled to off set any money owed to the defendants, as the plaintiff delivered boxes to the defendants that have not been paid for in the amount of $76,126.55.[5] If there was no money owed to the defendants pre-petition, the plaintiff contends there has been no material breach of the Contract.

The plaintiff further contends that the Contract was assumed according to the terms of the plan of reorganization. At the hearing, the defendants argued that assumption of the Contract was so procedurally defective that it was deemed rejected, according to Article 8 of the plan. Although the defendants claim they had no notice that the Contract would be treated as an executory contract in the bankruptcy case, a letter written by the defendant, Charlie Friedman, to the plaintiff before confirmation attempted to terminate the Contract.[6] The plaintiff asserts that this letter is an admission of a party, evidencing his knowledge that the Contract was an executory contract in the case. The defendants had the opportunity to file a motion to reconsider the notice of assumption but no such motion was filed. If the defendants had knowledge that they were parties to an executory contract in this case, the plaintiff argues that assumption was not procedurally defective.

### STANDARD OF REVIEW

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are

---

[5] A cause of action for conversion relating to the boxes in included in the plaintiff's complaint.

[6] Both parties have obtained a copy of the letter through discovery.

6

resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

I.      Choice of Law

Under Rule 7056 of the Federal Rules of Bankruptcy Procedure, a motion for summary judgment "shall be served at least 10 days before the time fixed for the hearing." The Local Rules of Bankruptcy Practice and Procedure specify that "all motions shall state with particularity the facts supporting the motion and shall state the relief requested." See Rule 7007-1, Bankr. EDNC.  The plaintiff contends that the defendants' motion for summary judgment is not in compliance with these rules, as the motion filed on March 27, 2006 did not state with any particularity the grounds for summary judgment. The memorandum in support of the motion was filed three business days before the hearing and the plaintiff asserts that it was untimely.

The court agrees and finds that although the motion for summary judgment was filed more than four months prior to the hearing, the memorandum outlining the defendants' position on choice of law was not filed in a timely manner. As there was not an adequate period of time in which to respond, the court will allow the plaintiff twenty days from the hearing to supplement their memorandum in opposition to the application of Louisiana substantive law in this adversary proceeding. The defendants will have ten days to reply to the plaintiff's supplement. Upon review of the memoranda, the court will likely rule on the choice of law question without further hearing.

II.     Breach of Contract

The RESTATEMENT (SECOND) OF CONTRACTS provides that "a material failure of performance

7

has, under this Section, these effects on the other party's remaining duties of performance with respect to the exchange. It prevents performance of those duties from becoming due. . . and it discharges those duties if it has not been cured during the time in which performance can occur." See RESTATEMENT (SECOND) OF CONTRACTS §§ 237, cmt. a (1981). The defendants argue that the plaintiff's breaches excused them from further performance under the Contract. Based on these material breaches, the defendants assert that the Contract is unenforceable as to the injured party, rendering the complaint moot. They seek summary judgment on all counts.

The plaintiff contends that if the defendants did not know of the alleged material breaches until discovery, their duties under the Contract were not discharged. Although the defendants also claim the plaintiff materially breached the Contract by failing to pay commissions, the plaintiff argues that it did not materially breach the Contract if there was no agreed upon payment schedule for the defendants' commissions.

Based on the foregoing, the court finds that there is a disputed issue of material fact as to whether the plaintiff breached the Contract by failing to fully pay the defendants' commissions before the petition date. There is also a disputed issue of fact as to whether such a breach is sufficiently material to excuse the defendants' performance under the Contract. The court also finds that the defendants must have knowledge of a material breach before such a breach can excuse their performance.

III.     Assumption of Executory Contract

Under 11 U.S.C. § 365(b)(1), a debtor in possession may assume or reject any executory contract of the debtor unless "there has been a default in an executory contract." If there has been a

8

default, the debtor in possession may not assume the contract unless the default is cured or adequate

assurance is provided that such default will be promptly cured. See 11 U.S.C. § 365(b)(1)(A) (2005).

Although the Code does not provide any guidance as to what constitutes adequate assurance of a

prompt cure, a court will examine "the debtor's future ability to cure the existing defaults" and this

analysis will be made  "in light of the debtor's past, current, and projected future financial

circumstances." In re Ehrenfried Techs., Inc., 1998 Bankr. LEXIS 804, *12 (Bankr. E.D. Va. June 1,

1998). See also In re Embers 86th St., Inc., 184 B.R. 892, 900 (Bankr. S.D.N.Y. 1995) ("Whether a

cure is 'prompt' for purposes of § 365(b)(1)(A) depends on the facts and circumstances of each

case.").

Under common practice, a debtor proposes by motion or in a plan of reorganization the terms

on which it will assume an executory contract, and a party that does not object is deemed to acquiesce.

In this case, the plaintiff's plan of reorganization provides for repayment of all unsecured claims in full

with interest over a three year period, including the acknowledged pre-petition claim. Although the

defendants argue that three years is not a prompt cure of the plaintiff's pre-petition default,[7] the

expected duration of the Contract is ten years. The completion of the cure payments is assured as it is

incorporated into the plaintiff's confirmation order. Several bankruptcy courts have found that an

extended cure can be "prompt" under § 365(b)(1)(A).[8] See In re Ehrenfried Techs., Inc., 1998 Bankr.

---

[7] The plaintiff asserts that there was no pre-petition default; therefore, a prompt cure under § 365 is not required. The court finds that a determination of whether the Contract was in default is not necessary, as the plaintiff properly assumed the Contract in either case.

[8] The court in In re Coors of North Mississippi, Inc., permitted the debtor to cure a pre-petition default over a thirty-six month period. 27 B.R. 918, 922 (Bankr. N.D. Miss. 1983). The court examined several factors in determining whether the proposed cure was prompt, including the expected

LEXIS 804, *12 (Bankr. E.D. Va. June 1, 1998)(allowing a three year cure); In re Whitsett, 163 B.R. 752, 755 (Bankr. E.D. Pa. 1994)(allowing a two year cure); In re Coors of North Mississippi, Inc., 27 B.R. at 922. Based on the facts and circumstances of this case, the court finds that a three year cure is "prompt" pursuant to § 365. Accordingly, the Contract was properly assumed by the debtor.

As to the defendants' argument that the assumption of the Contract was procedurally defective, the court finds there is sufficient evidence that the defendants understood the nature of the Contract and its implications in a bankruptcy case. The letter sent by the defendant, Mr. Friedman, evidences his knowledge[9] that he and Friedman & Broussard were parties to an executory contract in the plaintiff's bankruptcy case. Mr. Friedman was not only aware of the executory contract but he was concerned enough about its vitality that he improperly attempted to terminate it. The court does not excuse the omission of the Contract from plaintiff's Schedule G but the plan of reorganization properly allowed the plaintiff to assume executory contracts within thirty days of the Effective Date. The plaintiff's notice of assumption was filed within that time period and the defendants received such notice but they opted not to file a motion to reconsider. As the defendants were aware that they were parties to an executory contract in this case and never objected to the notice of assumption, the court finds that the assumption of the Contract was not procedurally defective.

## CONCLUSION

Based on a review of the pleadings, affidavits, depositions, admissions, and answers to

---

duration of the contract and whether the completion of the cure payments was assured. Id.

[9] Mr. Friedman is an officer of Friedman & Broussard and his knowledge is imputed to the corporation.

interrogatories, the court finds that material issues of fact exist in this proceeding. There is a material issue as to whether the plaintiff breached the Contract by failing to fully pay the defendants' commissions before the petition date. There is also a material issue of fact as to whether such a breach is material, excusing the defendants from further performance under the Contract. The court will defer ruling on the choice of law questions posed by the defendants' motion pending a review of any supplemental memoranda. The court further finds that the Contract was properly assumed pursuant to 11 U.S.C. § 365.

"End of Document"