SO ORDERED.

SIGNED this 06 day of October, 2006.

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

IN RE:

    SOUTHERN PRODUCE
    DISTRIBUTORS, INC.,

                Debtor.    Case No. 03-02838-8-JRL

    SOUTHERN PRODUCE
    DISTRIBUTORS, INC.,

                Plaintiff,

    vs.    Adversary Proceeding No.:
                                               05-00013-8-AP

    CHARLIE FRIEDMAN and
    FRIEDMAN & BROUSSARD
    PRODUCE, INC.,

                Defendants.

_____

### ORDER

This matter is before the court on the defendants' motion for summary judgment. On August 8, 2006, the court conducted a hearing in Raleigh, North Carolina. Following the hearing, supplemental

memoranda of law were filed by the parties.

## UNDISPUTED FACTS

1. The plaintiff is a corporation organized under the laws of North Carolina with its principal place of business in Faison, North Carolina.

2. Charlie Friedman is a resident of Louisiana, and Friedman & Broussard, Inc. is a Louisiana corporation.

3. On March 24, 2000, the plaintiff entered into a contract ("Contract") with Charlie Friedman and Friedman & Broussard Produce, Inc., allowing them to exclusively purchase, broker, and sell sweet potatoes and produce for the plaintiff beginning March 24, 2000 through March 23, 2010.

4. The Contract was signed in Louisiana.[1]

5. On January, 19, 2005, the plaintiff filed a complaint against Charlie Friedman and Freidman & Broussard Produce, Inc., asserting that the defendants violated the Contract, specifically the covenant not to compete. The plaintiff alleges that the defendants contacted its customers and solicited business from such customers without the plaintiff's consent.

6. In their answer, the defendants argue that the plaintiff was the first party to breach the Contract, and they deny the plaintiff's allegations in the complaint.

7. The defendants assert that Louisiana law applies to all causes of action alleged in the

---

[1] Although the Contract included in the record is not signed by defendants, plaintiff concedes for the purpose of this motion that the Contract was signed in Louisiana.

complaint.

8. The plaintiff asserts that North Carolina law applies to all causes of action alleged in the complaint.

## PROCEDURAL HISTORY

On August 8, 2006, the court conducted a hearing and denied defendants' motion for summary judgment on two issues. First, summary judgment was denied as to the assertion that there was a pre-petition breach by plaintiff that excused future performance by defendants. Secondly, summary judgment was denied as to the issue that plaintiff did not successfully assume the Contract in its Chapter 11 case. An order was filed on August 30, 2006. At the August 8, 2006 hearing, the court deferred ruling on the choice of law questions posed by the defendants' motion pending a review of supplemental memoranda. The court allowed the plaintiff twenty days from the August 8, 2006 hearing to supplement its memorandum in opposition to the application of Louisiana substantive law in this adversary proceeding. The defendants were allowed ten days to reply to the plaintiff's supplement. Briefing was concluded on September 7, 2006.

## STANDARD OF REVIEW

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

Choice of law issues are questions of law to be determined by the court. Stetser v. TAP Pharm. Prods., Inc., 165 N.C. App. 1, 14, 598 S.E.2d 570, 579 (2004). A federal court sitting in diversity is bound to follow the choice of law rules of the forum state. Klaxon Co. v. Stentor Elextric Mfg. Co., 313 U.S. 487, 496-97, 61 S. Ct. 1020, 1021-22 (1941). Additionally, the Fourth Circuit has held that unless some federal interest requires a different result, a federal bankruptcy court should apply the *Klaxon* rule, and therefore follow the choice of law rules of the forum state. In re Merritt Dredging Co., 839 F.2d 203, 206 (4th Cir. 1988). In this case, the plaintiff alleged six causes of action against the defendants: breach of contract, tortious interference with contractual relationships, misappropriation of trade secrets and confidential information, violation of the North Carolina Trade Secrets Protection Act, conversion, and violation of the North Carolina Unfair Trade Practices Act. This court must first look at the nature of each cause of action alleged in the complaint and then use North Carolina choice of law rules to determine which state's law applies to that cause of action.

1.      **Breach of Contract**

Under North Carolina choice of law rules, substantive questions of contract construction and interpretation are governed by the law of the state where the contract was made. Tanglewood Land Co., Inc. v. Byrd, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). Since it is undisputed that the Contract was executed in Louisiana, under traditional North Carolina choice of law rules Louisiana law would apply to the breach of contract cause of action.

However, plaintiff asserts that the Contract involves the sale of goods and should be governed

by the Uniform Commercial Code ("UCC"). If the Contract is governed by the UCC, it would be subject to the choice of law rule provision in N.C. Gen. Stat.§ 25-1-105(1). The plaintiff contends that the Contract is predominantly a contract for the sale of sweet potatoes and produce that also regulates the relationship between the parties regarding those sales. Additionally, plaintiff argues that because the number of boxes of sweet potatoes and produce sold by Friedman were counted in order for Friedman to receive payment from the plaintiff, "the Contract contemplates the sale of goods and the UCC should apply." Westpoint Stevens, Inc. v. Panda-Rosemary Corp., 1999 WL 33545512 at *4 (N.C. Super. Dec. 16, 1999).

Defendants object to the application of the UCC to the Contract and contend that the traditional North Carolina choice of law rules apply. Defendants assert that based on the plain language of Article 2 of the UCC the Contract does not fall within an Article 2 transaction.

The North Carolina Court of Appeals has stated that "[t]he scope of the UCC is limited to 'transactions in goods' and does not apply to contracts for the provision of services." Hensley v. Ray's Motor Co. of Forest City, Inc., 158 N.C. App. 261, 265, 580 S.E.2d 721, 724 (2003). The Contract at issue in this case is predominantly for services. The Contract allowed defendants to "purchase, broker and sell potatoes and produce for and on behalf of Southern." In return, plaintiff agreed to pay defendants "a commission of fifty cents per box of potatoes sold" for the first five years of the Contract and then increase the commission to fifty-five cents per box sold. Based on the terms of the Contract, the Contract is not for the sale of goods but instead is a service contract. Therefore, the UCC does not apply.

Since the UCC does not apply, under North Carolina choice of law rules, substantive questions

of contract construction and interpretation are governed by the law of the state where the contract was made. Tanglewood Land Co., Inc., 299 N.C. at 262, 261 S.E.2d at 656. It is undisputed that both parties to the Contract executed the Contract in Louisiana, and therefore Louisiana law will apply to the breach of contract cause of action.

Next, the court must look at defendants' argument that under Louisiana law the non-competition clauses in the Contract are void. Defendants assert that Louisiana has a strong public policy against non-competition agreements. Therefore, defendants contend that the clauses prohibiting defendants from competing with plaintiff or soliciting plaintiff's customers are void.[2]

However, defendants are mistaken as to the interpretation of Louisiana law. Under Louisiana law,

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes,

---

[2] The Contract provides:

> Friedman covenants and agrees that he will *not during the term of this contract* engage in a business directly or indirectly in competition with Southern involved with the purchasing or sale of sweet potatoes and/or produce. Friedman shall not (other than on behalf of Southern) *during the term of this contract*, directly or indirectly, on Friedman's own account...engage in or become financially interested in the buying and selling of sweet potatoes, or engage in any type of business handling items or products now handled or from time to time handled by Southern. Friedman shall *not during the term of this contract* for any reason whatsoever, directly or indirectly, solicit the trade or patronage of any of the customers or clients of Southern unless Friedman shall first receive the specific consent and agreement of Southern.

Exhibit A, Contract, page 3-4 (emphasis added).

>    municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.

La. R. S. § 23:291(C). This statute allows for an independent contractor to enter into a contract that would prohibit his/her right to compete, subject to some restrictions, for up to two years from the date of the last work performed under the contract. If an independent contractor can enter into a contract prohibiting competition after his/her contract has expired, a contract prohibiting competition during the term of the contract would certainly be valid. Additionally, the cases cited in defendants' brief all involve former employees and refer to post-employment competition. See Orkin Exterminating Co. v. Foti, 302 So. 2d 593 (La. 1974); Cellular One, Inc. v. Boyd, 94-1783 (La. App. 1 Cir. 3/3/95); 653 So. 2d 30; Turner Prof'l Servs, LTD. v. Broussard, 99-2838 (La. App. 1 Cir. 5/12/00); 762 So. 2d 184.

Louisiana does have a strong public policy against non-competition agreements. However, that policy appears to be directed at post-employment or post-contract competition and not competition that takes place during employment or during the term of the contract. Louisiana Smoked Prods. v. Savoie's Sausage & Foods Prods., 96-1716 (La. 7/1/97); 696 So. 2d 1373, 1379 ("Louisiana has consistently had a strong public policy against any employment contract which prohibits an employee from competing with a former employer."). Therefore, even under Louisiana law the clauses in the Contract prohibiting defendants from engaging in a business in competition with plaintiff or soliciting plaintiff's customers during the term of the Contract are not facially void.

As part of the breach of contract claim, plaintiff also alleges that defendants violated the

7

contractual obligation not to disclose plaintiff's trade secrets and confidential information. Under Louisiana law, confidentiality agreements are not subject to the prohibitions and requirements of La. R.S. 23:921 and are enforceable. Engineered Mechanical Services, Inc. v. Langlois, 464 So.2d 329, 334 n.15 (La. App. 1 Cir. 1984). Therefore the clauses in the Contract prohibiting defendants from disclosing plaintiff's trade secrets and confidential information are not facially void.

Based on the foregoing, the court finds that there is no disputed issue of material fact as to the place the Contract was executed. Therefore, Louisiana law will apply to the breach of contract claim. However, even when applying Louisiana law, the non-competition clauses and the confidentiality agreement in the Contract are not facially void and summary judgment is denied as to Count I.

**2.    Tortious Interference with Contractual Relationships, Misappropriation of Trade Secrets and Confidential Information, North Carolina Trade Secrets Protection Act, and Conversion**

Under North Carolina choice of law rules, substantial rights of the parties are determined by lex loci, the law of the situs of the claim. "For actions sounding in tort, the state where the injury occurred is considered the situs of the claim." Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d, 849, 853-54 (1988). The plaintiff in this case is located in North Carolina and its alleged economic harm occurred in North Carolina. Therefore, North Carolina law will apply to the tortious interference with contractual relationships, misappropriation of trade secrets and confidential information, and conversion claims, as well as the claim under the North Carolina Trade Secrets Protection Act[3].

**3.    North Carolina Unfair Trade Practices Act**

---

[3]See McElmurry v. Fergusson, 2006 U.S. Dist. LEXIS 10760, at *32 (M.D.N.C. March 8, 2006)(treating claims under the North Carolina Trade Secrets Protection Act as sounding in tort)

8

The North Carolina Court of Appeals is split on the substantive law to be applied to unfair or deceptive trade practice claims. [4] Additionally, federal courts predicting how the North Carolina Supreme Court would resolve this issue have also split on the appropriate rule to be used.[5] This court will follow the Eastern District of North Carolina's approach by applying the most significant relationship test in determining which law should apply to unfair trade practice claims. American Rockwool, Inc. v. Owen-Corning Fiberglass Corp., 640 F. Supp. 1411, 1430-31 (E.D.N.C.1986).

Based on the record before the court at this time, it appears that North Carolina has the most significant relationship with this transaction. However, due to the many disputed material facts, the court reserves the right to change that determination if additional underlying facts disputing that conclusion come to light during trial. Therefore, the court denies the defendant's motion for summary judgment as to Count VI.

## CONCLUSION

Based on a review of the pleadings, affidavits, depositions, admissions, and answers to interrogatories, the court finds that material issues of fact exist in this proceeding. There is a material issue as to whether the non-competition clauses in the Contract are valid or were violated, and

---

[4] See Andrew Jackson Sales v. Bi-Lo Stores, Inc., 68 N.C. App. 222, 225, 314 S.E.2d 797, 799 (1984) ("the law of the state having the most significant relationship to the occurrence gives rise to the action" should govern). But see United Virginia Bank v. Air-Lift Assocs., Inc., 79 N.C. App. 315, 321, 339 S.E.2d 90, 93 (1986)("the law of the state where the injuries are sustained should govern").

[5] See United Dominion Indus., Inc. v. Overhead Door Corp., 762 F. Supp. 126, 129 (W.D.N.C. 1991)(the law of the state where the injuries are sustained is the appropriate state law). But see Food Lion, Inc. v. Capital Cities/ABC, Inc., 964 F.Supp. 956, 959 (M.D.N.C. 1997); American Rockwool, Inc. v. Owen-Corning Fiberglass Corp., 640 F. Supp. 1411, 1430-31 (E.D.N.C.1986) (the law of the state with the most significant relationship to the occurrence should govern).

therefore summary judgment is denied as to Count I. Counts II, III, IV, and V sound in tort and are subject to North Carolina law, and therefore summary judgment is denied as to those counts. Finally, there is also a material issue as to whether Louisiana or North Carolina has the most significant relationship with this transaction, and therefore summary judgement is denied as to Count VI.

"END OF DOCUMENT"