**SO ORDERED.**

**SIGNED this 10 day of May, 2007.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

| | |
|---|---|
| **SOUTHERN PRODUCE DISTRIBUTORS, INC.,**<br>       Debtor. | Case No. 03-02838-8-JRL |
| **SOUTHERN PRODUCE DISTRIBUTORS, INC.,**<br>       Plaintiff, | Adversary Proceeding No.:<br>L-05-00013-8-AP |
|        vs. | |
| **CHARLIE FRIEDMAN and FRIEDMAN & BROUSSARD PRODUCE, INC.,**<br>       Defendants. | |
| **CHARLIE FRIEDMAN, PAMELA FRIEDMAN, and FRIEDMAN & BROUSSARD PRODUCE, INC.,**<br>       Counter-Claimants and<br>       Third Party Plaintiffs, | |
|        vs. | |
| **SOUTHERN PRODUCE DISTRIBUTORS, INC. and D. STEWART PRECYTHE,**<br>       Third Party Defendants. | |

_____

**ORDER**

This case is before the court on a motion to dismiss the third party claims against D. Stewart Precythe filed by Mr. Precythe and a motion for an order delaying responses to discovery filed by Mr. Precythe and Southern Produce Distributors, Inc. ("Southern Produce"). On April 23, 2007, the court conducted a hearing on these matters in Raleigh, North Carolina.

**JURISDICTION AND PROCEDURE**

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

**BACKGROUND**

On March 24, 2000, Southern Produce entered into a contract with Charlie Friedman and Friedman & Broussard Produce, Inc., regarding the brokering and sales of sweet potatoes. Southern Produce later filed a chapter 11 bankruptcy petition on March 31, 2003. On January, 19, 2005, Southern Produce filed a complaint against Charlie Friedman and Friedman & Broussard Produce, Inc., alleging that they violated the contract by contacting and soliciting Southern Produce's customers without its consent. On November 16, 2006, Charlie Friedman, Pamela Friedman, and Friedman & Broussard Produce, Inc. (the "Friedman Parties") filed a counterclaim against Southern Produce and a third party complaint against Precythe alleging that Southern Produce violated the contract by selling sweet potatoes to the Friedman Parties'

customers from 2000 to 2002. Additionally, the Friedman Parties allege that in 2003, 2005, and 2006 Southern Produce sold sweet potatoes utilizing the Friedman Parties' labels and trade names without their consent. Based on these alleged facts, the counterclaim contains causes of action for misappropriation of trade names and trademarks, unauthorized sales of product, tortious interference with business contract, and the third party complaint seeks to pierce the corporate veil and impose liability on Precythe.

The third party complaint alleges liability on the part of Precythe based on his alleged control of Southern Produce. With respect to Precythe, the third party complaint alleges:

33. The allegations contained in Paragraphs 1 through 32 are re-alleged as if set forth in their entirety.

34. At all times relevant, the Defendant Precythe was and is the 100% shareholder of the Defendant Corporation.

35. Upon to sometime in May 2003, the Defendant Precythe was the President of the Defendant Corporation.

36. From sometime in May 2003 to present, the Defendant Precythe has served as the Chief Executive Officer of the Defendant Corporation.

37. Upon information and belief, up to the filing of the Defendant Corporation's bankruptcy, the Defendant Corporation did not properly adhere to the required corporate duties such as conducting board of director meetings and shareholder meetings.

38. Upon information and belief, the Defendant Precythe used the Defendant Corporation as his own instrumentality. Specifically, and without limitation, the

following occurred:

    a.    The corporate assets were used to pay personal debts;

    b.    The Defendant Corporation and the Defendant Precythe co-mingled assets for each's own use;

    c.    The Defendant Corporation hired personnel to take care of the financial transactions of the Defendant Precythe;

    d.    The Defendant Corporation hired the Defendant Precythe's girlfriend and paid her although she did not perform any duties for the Defendant Corporation.

39.    Grounds exist for the disregard of the corporate structure and to assess the Defendant Precythe individually with the damages proven herein.

Precythe now seeks to have the claim for piercing the corporate veil dismissed for failure to state a claim upon which relief may be granted.

## STANDARD OF REVIEW

For purposes of deciding a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) applicable to bankruptcy by Bankruptcy Rule 7012, the court takes the complaint's factual allegations as true. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). Dismissal is appropriate if the nonmoving party can prove no set of facts sufficient to support its claims for relief. If, on a motion to dismiss for failure to state a claim upon which relief may be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment, and all parties shall be given reasonable opportunity to present all pertinent

material. Fed. R. Civ. P. 12(b). Thus, Rule 12(b)(6) permits a party to defend a motion to dismiss by presenting evidence; however, the party can do so only after notice that the court intends to convert the Rule 12(b)(6) motion into a summary judgment motion. Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1471 (4th Cir. 1991). If no conversion of the Rule 12(b)(6) motion is made then the court must limit itself to the facts and allegations stated in the complaint.

## ANALYSIS

The Friedman Parties seek to impose individual liability on Precythe for the alleged wrongs committed by Southern Produce. The Friedman Parties assert that the alleged facts are sufficient to pierce Southern Produce's corporate veil and thereby extend liability to Precythe. Precythe disagrees and argues that under North Carolina law the Friedman Parties have failed to allege any facts that justify piercing the corporate veil.

Under North Carolina law, a corporate form will be respected unless the corporation "is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for its activities in violation of the declared public policy or statute of the state[.]" Glenn v. Wagner, 313 N.C. 450, 453, 329 S.E.2d 326, 329 (1985). North Carolina courts have held that piercing the corporate veil is a "drastic remedy" and should only be invoked in extreme cases where it is necessary to serve the ends of justice. Keener Lumber Co., Inc. v. Perry, 149 N.C. App. 19, 37, 560 S.E.2d 817, 829 (N.C. Ct. App. 2002); Cherry v. State Farm Mut. Auto. Ins. Co., 162 N.C. App. 535, 538, 590 S.E. 2d 925, 929 (N.C. Ct. App. 2004)(piercing the corporate veil is not to be taken lightly); Dorton v. Dorton, 77 N.C.App., 667, 670, 336 S.E.2d 415, 418 (N.C. Ct. App. 1985)(piercing the corporate veil is a remedy that should be exercised reluctantly

and cautiously).

North Carolina applies the "instrumentality rule" to determine when the corporate form should be disregarded and the veil of the corporation pierced. Glenn, 313 N.C. at 454, 329 S.E.2d at 330. Under this rule, "[a] corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded."[1] Id. at 454, 329 S.E.2d at 330. The court in *Glenn* enumerated three elements which support disregarding the corporate entity under the instrumentality rule:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Id. at 454-55, 329 S.E.2d at 330. The court also noted possible factors to consider in determining whether there is sufficient control and domination to satisfy the first prong of the instrumentality rule. These factors include: (1) inadequate capitalization, (2) noncompliance with corporate formalities, (3) complete domination and control, (4) excessive fragmentation, (5) nonpayment of dividends, (6) insolvency of the debtor corporation, (7) siphoning of funds by the dominate

---

[1] The instrumentality rule may be used to impose liability on an individual as well as a corporation. Becker v. Graber Builders, Inc., 149 N.C. App. 787, 790, 561 S.E.2d 905, 908 (N.C. Ct. App. 2002).

shareholder, (8) non-functioning of other officers or directors, and (9) absence of corporate records. Id. at 458, 329 S.E.2d at 332. The court stressed that these are merely factors, not an exhaustive checklist, in determining whether sufficient control and domination is present to satisfy the first prong. Id.

In the present case, Precythe argues that the third party complaint does not set forth the necessary elements for piercing the corporate veil. The third party complaint fails to allege complete domination and control of Southern Produce by Precythe, which is necessary to satisfy the first prong of the *Glenn* test. Precythe also contends that there are no allegations in the third party complaint that address the second and third prongs. The third party complaint contains no allegations connecting the alleged acts by Precythe to the alleged harm suffered by the Friedman Parties. Precythe concludes that the absence of any allegations on the second and third prongs is fatal to the Friedman Parties' claim against him.

The Friedman Parties contend that Precythe did exercise control over Southern Produce to the extent that piercing the corporate veil is appropriate.[2] The Friedman Parties argue that the alleged failure to adhere to corporate duties by Southern Produce, Precythe's role as President and later CEO of Southern Produce, in conjunction with the alleged intermingling of corporate and personal finances meet the first prong of the *Glenn* test. As to prongs two and three, the Friedman Parties contend that Precythe knew about the alleged wrongs by Southern Produce and that those wrongs caused injury to the Friedman Parties.

---

[2] The court it is not considering the seventy plus pages attached to the Friedman Parties' response to the motion to dismiss. Instead, the court is looking only at the third party complaint and the legal arguments made by counsel at the hearing.

Having reviewed the third party complaint, the court finds that the allegations contained in it are insufficient to support a claim for piercing the corporate veil. Although, the Friedman Parties have alleged that Precythe controlled Southern Produce, such allegations are insufficient to meet the first prong of the *Glenn* test. *Glenn* requires the control to be "such complete domination of policy and business practice that as to the transactions in question the subservient corporation had no separate mind, will or existence of its own." Glenn, 313 N.C. at 453, 329 S.E.2d at 329-30. The Friedman Parties failed to allege such complete domination and control by Precythe over Southern Produce. Additionally, the third party complaint contains no allegations that Southern Produce was a sham corporation. *See* Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331,349 (4th Cir. 1998)(citing B-W Acceptance Corp. v. Spencer, 268 N.C. 1, 8, 149 S.E.2d 570, 575 (N.C. 1966)(North Carolina law provides that "[a] corporate parent cannot be liable for the acts of its subsidiary unless the corporate structure is a sham"). In contrast, the court takes judicial notice of the fact that Southern Produce is a multi-million dollar corporation that is currently involved in a successful chapter 11 reorganization and has been since 2003.[3] In this highly litigious case, no creditor nor the Bankruptcy Administrator has ever suggested that the debtor ignored corporate formalities, or is a "sham" corporation. Furthermore, the third party complaint concedes that Precythe was not even the president of Southern Produce when a number of the alleged transactions occurred. The allegations set forth in the third party

---

[3]A "district court may also take judicial notice of matters of public records without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994); *see also* Holly's, Inc. v. City of Kentwood (In re Holly's, Inc.), 172 B.R. 545, 554 (Bankr. W.D. Mich. 1994)(a bankruptcy court may take judicial notice of the bankruptcy court's records in ruling on a motion for summary judgment or a motion to dismiss).

complaint are insufficient to meet the control prong of the *Glenn* test.

More important, even if the third party complaint did meet the first prong, it contained no allegations as to the second and third prongs. The Friedman Parties failed to allege that Precythe used his complete domination and control of Southern Produce in order to commit the alleged wrongs. Instead, the third party complaint merely alleged that Southern Produce, not Precythe, used the Friedman Parties' labels and sold to the Friedman Parties' customers.[4] Furthermore, the third party complaint failed to allege that Precythe's complete domination of Southern Produce was the approximate cause of the Friedman Parties' damages. The wrongs that the Friedman Parties accuse Southern Produce of committing took place within its routine day-to-day operations, and those wrongs had no connection to the alleged control exercised by Precythe over Southern Produce.

In conclusion, the Friedman Parties' bare allegations of control are insufficient to allow them to pierce Southern Produce's corporate veil so as to extend liability to Precythe. There are no allegations that Precythe completely dominated Southern Produce, much less any facts that support that allegation. Additionally, there are no allegations that the alleged control was used by Precythe to commit the alleged wrongs.

## **CONCLUSION**

Based on the forgoing, the Friedman Parties' third party complaint is insufficient to

---

[4] At the hearing, counsel for the Friedman Parties' argued that Precythe knew that Southern Produce was using the Friedman Parties' labels and that it was selling to the Friedman Parties' customers. Even if the court considered this information despite the fact that it is not alleged in the third party complaint, mere knowledge by a CEO or president of a corporate wrong is not enough to pierce the corporate veil and hold the individual liable.

support piercing the corporate veil of Southern Produce. The motion to dismiss the third party claims against D. Stewart Precythe is ALLOWED. Furthermore, the motion for an order delaying responses to discovery is now moot.

"END OF DOCUMENT"